UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHAUN GRAGORY MITCHELL,<br><br>Defendant. | 4:24-CR-40008-KES<br><br>ORDER DENYING MOTION TO REOPEN SUPPRESSION HEARING |

## INTRODUCTION

Defendant, Shaun Gragory Mitchell, is before the court on an indictment charging him with conspiracy to distribute 400 grams or more of a mixture or substance containing fentanyl.  *See* Docket 1.  Mitchell moves to reopen the suppression hearing in this case.  *See* Docket 138.  The United States ("government") resists the motion.  *See* Docket 145.

## FACTS

Mitchell previously filed a suppression motion concerning five search warrants.  *See* Docket 88.  After an evidentiary hearing and a report and recommendation from the magistrate judge, this court denied Mitchell's motion.  Docket 128.  The court incorporates herein by reference the factual findings and conclusions of law from its prior opinion.

Mitchell came to the attention of law enforcement after a person in Yankton, South Dakota, overdosed and died after taking illicit fentanyl.  Docket

110 at 8-9. A confidential informant (CI) ultimately disclosed that she had been purchasing fentanyl several times a week for the last five to eight months by contacting a cell phone that had an area code of (218). *Id.* at 9-10, 32. The CI told law enforcement that one of three men would answer when they called the (218) number: Shaun Mitchell, his brother (later identified as William Wilson), or Wilson's son. *Id.* at 19, 21.

Police also identified a cell phone number with a (612) area code that the CI used to purchase fentanyl. *Id.* at 72. The (612) phone was associated with a CashApp account belonging to Shaun Mitchell. *Id.* at 128-29. Police further learned that the CI sometimes used a third phone number, with a (605) area code, to purchase fentanyl from the same group. *Id.* at 24.

On August 23 and 24, 2023, the CI made two controlled buys of fentanyl under law enforcement supervision. *Id.* at 10-12. The CI called the (218) number to arrange these fentanyl purchases. *Id.* at 19. Wilson responded to the CI's request in both instances and sold the CI the requested fentanyl. *Id.* at 33, 35.

On October 11, 2023, South Dakota Division of Criminal Investigation Special Agent Ryan Pennock applied for a search warrant seeking prospective location information for the (612) phone number associated with Shaun Mitchell's CashApp account. *See* Docket 106 at 1-41 (Exh. 1 from the original suppression hearing). In his affidavit in support of that search warrant, Agent Pennock clearly stated that all three men (Mitchell, Wilson, and Wilson's son) used the (218) cell phone number to distribute fentanyl and that "[i]t is

2

unknown who the CI was actually communicating with" when communicating with the (218) phone number. *Id.* at 11. Furthermore, the affidavit detailed the two controlled buys made by the CI in August and stated that Wilson was the one who responded to the CI's request and actually sold drugs to the CI. *Id.*

On October 24, 2023, Minnesota Bureau of Criminal Apprehension Special Agent Dan Louwagie applied for a tracker warrant for Mitchell's grey Dodge Charger. *Id.* at 82-92 (Exh. 3 from the original suppression hearing). Agent Louwagie set forth in his affidavit information that had been relayed to him by Agent Pennock concerning his investigation of Mitchell. *Id.* at 88-90. Agent Louwagie's affidavit contained the same information regarding the CI's communication with the (218) phone number to arrange purchases of fentanyl and that Mitchell, Wilson, and Wilson's son all used that phone number at various times. *Id.* Agent Louwagie's affidavit also stated that, during the two controlled purchases of fentanyl made by the CI in August using the (218) phone number, Wilson was the individual who responded and personally sold the drugs to the CI. *Id.*

On October 24, 2023, Agent Louwagie also applied for a tracker warrant for Mitchell's silver Chevrolet Suburban. *Id.* at 93-101 (Exh. 4 from the original suppression hearing). This affidavit also recited the information relayed to Agent Louwagie by Agent Pennock. *Id.* at 97-99. The affidavit again recited the information contained in the Dodge Charger affidavit: the CI used the (218) phone number to purchase fentanyl from one of three men: Mitchell,

3

Wilson, or Wilson's son; the CI arranged for two controlled buys in August using the (218) phone number; and on both occasions, Wilson was the one who actually sold the drugs to the CI. *Id.*

On November 7, 2023, Agent Pennock applied for a cell site simulator search warrant seeking to identify the cell phone being carried by Mitchell. *See* Docket 92-6. The affidavit in support of this search warrant indicated that the CI informed law enforcement that the CI had ben purchasing fentanyl several times per week over a period of several months from three individuals: Mitchell, Wilson, or Wilson's son. *Id.* at 7-8. The CI would contact the group to arrange fentanyl purchases by communicating with a cell phone with a (218) area code. *Id.* In August, the CI arranged to make two controlled buys of fentanyl using the (218) phone number. *Id.* On both occasions, Wilson was the one who met the CI and personally sold the fentanyl to the CI. *Id.* at 8-9.

Finally, on December 19, 2023, Agent Pennock applied for a search warrant to search Mitchell's storage unit in Sioux Falls, South Dakota, his vehicles, and his person. *See* Docket 106 at 102-43 (Exh. 5 from the original suppression hearing). Like the affidavits described above, the affidavit in support of this search warrant stated that the CI contacted a phone number with a (218) area code to purchase fentanyl; that calls to that number were answered by either Mitchell, Wilson, or Wilson's son; that the CI completed two controlled buys of fentanyl in August through the (218) phone number; and that, on both occasions, Wilson personally met with the CI and sold the drugs to the CI. *Id.* at 108-09.

Recently, defense counsel received in discovery from the government a copy of a law enforcement subpoena served on T-Mobile on September 5, 2023, seeking subscriber information for the (218) phone number. Docket 138 at 3-4. T-Mobile's response to the subpoena indicated that the (218) phone number was subscribed to by Wilson for the time period June 1, 2023, to September 2, 2023. *Id.* at 3. Because this subscriber information obtained through the law enforcement subpoena was not included in any of the five search warrant affidavits discussed above, Mitchell alleges a *Franks* violation has occurred and argues that the evidence derived from the five search warrants should be suppressed. *Id.* at 5-10. Because the results of the subpoena were not divulged prior to the first suppression hearing in this matter, Mitchell seeks to reopen that hearing. *Id.* at 10.

For the reasons discussed below, the court denies Mitchell's request to reopen the suppression hearing and further denies his renewed request to suppress the evidence obtained from the search warrants.

## DISCUSSION

### A.    Validity of a Search Warrant

The Fourth Amendment requires that a search warrant may be issued only upon a showing of probable cause. *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). In order to challenge a finding of probable cause under *Franks*, a defendant must show, by a preponderance of the evidence, that (1) the affiant, in preparing the search warrant affidavit, deliberately and knowingly, or with reckless disregard for the truth, included falsehoods; and

5

(2) the affidavit lacks sufficient content to support a finding of probable cause if the challenged information is set aside. *Franks v. Delaware*, 438 U.S. 154, 156, 171-72 (1978); *United States v. Humphreys*, 982 F.2d 254, 258 n.2 (8th Cir. 1992). The same analysis applies to omissions of facts in that the defendant must show (1) that the affiant intentionally or recklessly omitted material facts thereby making the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. *Humphreys*, 982 F.2d at 258 n.2.

The defendant's challenge must be more than conclusory and must be supported by the evidence. *Franks*, 438 U.S. at 171. The defendant must specify which parts of the affidavit are claimed to be false and must provide a statement of supporting reasons or an "offer of proof." *Id.* "Allegations of negligence or innocent mistake are insufficient." *Id.* Finally, the defendant may only challenge the veracity of the affiant's statements and not that of nongovernmental informants because a reviewing court is concerned only with whether the affiant knowingly and deliberately included falsehoods or recklessly omitted the truth. *Id.*

"A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Further, affidavits supporting search warrants are considered presumptively valid. *Franks*, 438 U.S. at 171. "Probable cause requires that the circumstances set forth in an affidavit supporting an application for a

6

search warrant demonstrate a 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Tyler*, 238 F.3d 1036, 1038 (8th Cir. 2001) (quoting *Gates*, 462 U.S. at 238)).

In determining whether probable cause exists, courts look to the totality of the circumstances and consider all the facts "for their cumulative meaning" rather than evaluating each fact independently. *Tyler*, 238 F.3d at 1038. "Applications and affidavits for issuance of a warrant should be examined under a common-sense approach and not in a hypertechnical fashion." *Williams*, 10 F.3d at 593 (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). The key question in determining whether a search warrant is supported by a finding of probable cause is whether, viewing all of the information collected by law enforcement as a whole, a "reasonable person could suspect that a search would uncover evidence of crimes committed by [the defendant]." *Tyler*, 238 F.3d at 1038.

> The Supreme Court summarized the probable cause standard as follows:
>
> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238-39 (citation omitted) (alteration in original).

**B.    Omission of Subscriber Information As to the (218) Phone Number**

    **1.    Whether SA Pennock Deliberately or Recklessly Omitted This Information**

The trial in this matter is scheduled to begin one week from today.  The court dispenses with the need for an evidentiary hearing given the time constraints (and the court's legal conclusions below) and assumes—without so holding—that Agent Pennock and Agent Louwagie deliberately or recklessly omitted the subscriber information for the (218) phone number from their affidavits.

    **2.    Whether the Affidavits Supply Probable Cause When the Missing Information is Included**

The next step in the analysis is to determine whether the affidavits lack sufficient content to support a finding of probable cause if the omitted information is considered along with the other facts that were present in the affidavit.  *Humphreys*, 982 F.2d at 258 n.2.  This court previously exhaustively examined each of these affidavits and found that they establish probable cause.  *See generally* Docket 128.  The court will not reiterate that analysis but restricts its examination to the new fact asserted by Mitchell.

The subscriber information for the (218) phone number would have linked the phone to Wilson. But the affidavits also reflected that three individuals—Mitchell, Wilson, and Wilson's son—used the (218) phone number to facilitate fentanyl sales to the CI. In addition, each affidavit stated that during the August controlled purchases, Wilson was the individual who met the CI and personally sold the drugs.

8

Thus, even assuming Wilson was the subscriber for the (218) phone number, that fact does not undermine the affidavits' core assertions that multiple individuals used the phone in connection with drug trafficking activity. Nor does it negate the evidence that Mitchell and Wilson's son also participated in sales through that number.

As such, the omission of the subscriber information would not have affected the issuing judges' probable cause determinations for any of the search warrants. As previously analyzed by the court with respect to the challenged warrants, each affidavit contained substantial independent evidence supporting probable cause. *See* Docket 128 at 44-58.

## CONCLUSION

Under *Franks,* a defendant must show deliberate or reckless omission and that the remaining affidavit, if the omitted information was included, would be insufficient to support probable cause.  Even including the new facts asserted by Mitchell, he has not met this burden.  The affidavits, viewed in their entirety and supported by multiple corroborated sources, provided a substantial basis for the issuing judicial officers to conclude that probable cause existed, and the court must accord substantial deference to that determination.  Thus, it is

9

ORDERED:

1. That Mitchell's motion to reopen the suppression hearing (Docket 138) is denied.

2. That Mitchell's motion to suppress based upon the late disclosure of the subscriber information for the (218) phone is denied.

Dated May 26, 2026.

BY THE COURT:

*/s/ Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE